1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,        : 11-CR-00587(RJD)
                                 :
                                 :
      -against-                  : United States Courthouse
                                 : Brooklyn, New York
                                 :
                                 :
                                 : Thursday, November 20, 2014
PHILSON ANDREWS,                 : 11:00 a.m.
                                 :
          Defendant.             :
                                 :

- - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE RAYMOND J. DEARIE
UNITED STATES SENIOR DISTRICT JUDGE

A P P E A R A N C E S:

For the Government: LORETTA E. LYNCH, ESQ.
                    United States Attorney
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
                BY:  ALIXANDRA ELEIS SMITH, ESQ.
                    Assistant United States Attorney

For the Defendant:   LAW OFFICE OF NORMAN TRABULUS
                    345 Seventh Avenue
                    21st Floor
                    New York, New York 10001
                BY: NORMAN TRABULUS, ESQ.


Court Reporter:     VICTORIA A. TORRES BUTLER, CRR
                    225 Cadman Plaza East / Brooklyn, NY 11201
                    **VButlerRPR@aol.com**

Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcription.

Proceedings                                    2

1           (In open court.)

2           (Judge RAYMOND J. DEARIE enters the courtroom.)

3           THE COURTROOM DEPUTY:  All rise.

4           Will the attorneys please come up to the podium.

5           (Defendant enters the courtroom.)

6           THE COURT:  Please be seated, folks.

7           THE COURTROOM DEPUTY:  We are on this morning for a

8    sentence.  This is United States of America versus Philson

9    Andrews, Docket Number 11-CR-587.

10          Can I ask the attorneys please to note their

11   appearance, beginning with counsel for Government.

12          MS. SMITH:  Good morning, Your Honor.

13          Alixandra Smith for the Government.

14          THE COURT:  Good morning.

15          MR. TRABULUS:  Good morning, Your Honor, Norman

16   Trabulus for the defendant.

17          THE COURT:  Mr. Trabulus, good morning.

18          Mr. Andrews, good morning.

19          THE DEFENDANT:  Good morning.

20          THE COURT:  Are we ready to proceed?

21          MR. TRABULUS:  Yes.

22          THE COURT:  I think I am ready.  I think I am ready,

23   but I have a number of questions.

24          MR. TRABULUS:  Okay.

25          THE COURT:  There is statements in the report that

Proceedings                                           3

1   Mr. Andrews supplied the weapon for this particular robbery.

2   Mr. Andrews, according to Mr. Trabulus, denies that.

3            What is the Government's position on that?

4            MS. SMITH:  Your Honor, the Government's position

5   based on information from a cooperator who had been prepared

6   to testify at trial, that it was Mr. Andrews that had procured

7   the gun that was used during the robbery.

8            THE COURT:  Oh.

9            Are we headed toward a Fatico hearing on that?  Is

10  that the request of the defense?

11           MR. TRABULUS:  If Your Honor redeems that as

12  material to sentencing, I think we would have no choice,

13  Your Honor, but I think this cooperator has a history of

14  lying, including about that gun.

15           So, but let me just ask Mr. Andrews whether he wants

16  it, if Your Honor deems it material to sentence.

17           THE COURT:  Before you ask him, let me give you the

18  full picture.

19           MR. TRABULUS:  Okay.

20           THE COURT:  Mr. Andrews, as well, according to

21  counsel, denies involvement in any of the robberies and I take

22  it your position is the same.  According to a cooperator, he

23  was involved in a series of armed robberies?

24           MS. SMITH:  Right.  The series of robberies that

25  took place in April of 2011.

Proceedings                                    4

1          THE COURT:  Well, the robbery in question here took

2    place.

3          MS. SMITH:  In June of 2011.

4          THE COURT:  Is that right?

5          Excuse me, a second.  You are right.

6          MS. SMITH:  I believe there were two on April 23rd.

7          THE COURT:  What about that?  Do I have a fellow?

8    Do I sentence him as if he were in, has pled guilty to an

9    isolated armed robbery, or is this a fellow who as been in a

10   whole series?  Certainly it seems the relevant for purposes of

11   sentencing.

12         Would you be prepared to go forward to attempt to

13   substantiate the claim that he was involved in other

14   robberies?

15         MS. SMITH:  Not prepared to go forward today.

16         THE COURT:  No, I do not mean today.

17         MS. SMITH:  It would be based on cooperator

18   testimony.

19         THE COURT:  Is that a yes?

20         MS. SMITH:  That's a yes.  I mean, we were prepared

21   at trial.  Your Honor had excluded as 404(b), I believe.  So

22   we weren't necessarily going to introduce that information at

23   trial.

24         THE COURT:  One thing has little to do with the

25   other.

Proceedings                                            5

1          MS. SMITH:  No, I recognize that.  So when I say we

2    had been prepared to produce at trial, that we would be.

3          There were also, I mean, there were a series of

4    robberies in 2007 as well.  We do not, as far as I know, have

5    information other than the fact that the defendant was charged

6    with a whole series of them and pled guilty to one.

7          THE COURT:  Otherwise, I tend to agree with

8    Mr. Trabulus on his application of the guidelines.

9          The only, the close question being, is it Mr. Bacon?

10   The second hostage, for lack of a better way to put it, is

11   that Mr. Bacon?

12         MR. TRABULUS:  There was no second hostage here.

13   There was Mr. Kane was the hostage.

14         THE COURT:  Cane.

15         MR. TRABULUS:  Mr. Kane.

16         THE COURT:  That is a closer question, but I do not

17   see it as foreseeable.  Not surprising.  It is interesting.

18   It was not surprising that something like this would happen --

19         MS. SMITH:  Right.

20         THE COURT:  -- when the police show up on the scene

21   almost immediately, according to Mr. --

22         MS. SMITH:  Mr. Kane.

23         THE COURT:  Yes.

24         MS. SMITH:  I don't think it's in dispute that they

25   showed up pretty much.

```
                         Proceedings                        6
```

 1              MR. TRABULUS:  By the way, Your Honor --

 2              THE COURT:  But the plan was to get in and get out.

 3              MR. TRABULUS:  Correct.

 4              THE COURT:  So, I do not see it as foreseeable.  I

 5    do not see it as surprising.  So I tend to agree with his

 6    calculation of the guidelines.

 7              MS. SMITH:  On the two-point restraint enhancement.

 8              THE COURT:  Yes.  I do not know that there is

 9    anything else --

10              MR. TRABULUS:  There's a dispute as to Criminal

11    History Category, Your Honor, and it's a fairly technical

12    argument about whether or not the 2004 conviction for the 2003

13    crime counts.  And that is, it's the difference between

14    Criminal History Category III, which is what I maintain and

15    Criminal History Category IV, which is what the Government

16    maintains and what the Probation Department maintains, and I

17    can summarize that for Your Honor pretty quickly.

18              THE COURT:  To be quiet frank, I was so much

19    concentrating on the events of the robbery itself and that I

20    missed it.  Go ahead.

21              Does it have to do with the juvenile adjudication?

22              MR. TRABULUS:  It was a youthful offender

23    adjudication, and there's no dispute that a youthful offender

24    adjudication can count as an adult conviction.

25              THE COURT:  Right.

Proceedings                                                              7

1        MR. TRABULUS:  But the issue here is this, and it's

2   a narrow issue, and it's not presented to the case law.

3        In this case, he received, as a result of his

4   youthful offender adjudication, a sentence that could not

5   lawfully have been applied to an adult offender.  It's not

6   just that he received a lower sentence that he would have

7   received had he not gotten a youthful offender adjudication.

8   It was actually a sentence that would have been an illegal

9   sentence if given to an adult, and the prosecution would have

10  been able to appeal it and would have been successful.

11       So, the reason that I say that that's important is,

12  that under the guidelines, Your Honor, there is a commentary

13  and the commentary says that if somebody receives an adult

14  sentence, then that five-year cutoff period doesn't count,

15  doesn't apply, and in that event, the conviction would have

16  count.

17       THE COURT:  Right.

18       MR. TRABULUS:  Would count.

19       So, my contention, Your Honor is, in this somewhat

20  unusual situation, where you have a sentence, where you have

21  commentary that says an adult sentence, and you have a

22  sentence that could not lawfully have been given to an adult,

23  irrespective of the fact that he was a YO, irrespective of the

24  fact that he served time at an adult institution, it wasn't an

25  adult sentence.

Proceedings                                    8

1          So, that's what my argument is based on.

2          MS. SMITH:  Your Honor, the Government --

3          THE COURT:  I have never confronted it before.  He

4   is certainly at an adult facility.

5          MS. SMITH:  Yes.  The Government addresses it at

6   page 9 to 10 of its brief.

7          Basically, any sentence that you're going get, once

8   you are adjudicated as a youthful offender, it's quite common

9   to get a sentence that you wouldn't have gotten as adult.

10  That's kind of the whole point of the youthful offender

11  scheme.

12         I had put in my brief a case from 2007.  Basically,

13  I think Mr. Trabulus's argument is that because he received an

14  indeterminate sentence of one to three years in prison, that

15  somehow, because that sentence wouldn't have been available if

16  he had been convicted as an adult, it's not an adult sentence.

17         But those aren't the factors the courts have looked

18  to.  They look to where the sentence is served; where you were

19  convicted, if you are convicted in adult court or juvenile

20  court, and I have the Amante case, which is on page 10, which

21  is a 2007 Second Circuit case, where the Second Circuit

22  concluded that the District Court had not erred, obviously

23  doing that analysis of the underlying sentence.

24         Where the defendant had been sentenced to two terms

25  of one to three years a similar indeterminate sentence, and

VB        OCR        CRR

Proceedings                                                        9

1   that had been determined as an adult conviction.  Looking

2   again at the underlying factors, what court are you in when

3   the sentence is administered, where are you serving your time,

4   not simply kind of what does the number look like as opposed

5   to what you could have gotten if you hadn't been adjudicated

6   as a youthful offender.

7               MR. TRABULUS:  Your Honor, with regard to that

8   Amante case, it didn't present the precise issue here and the

9   argument wasn't raised either.

10              It's true that the defendants there received an

11  indeterminate sentence of one to three, which is the same

12  sentence he received earlier on, but there's nothing in the

13  record to indicate that the defendants there could not have

14  received that sentence as an adult and, in fact, although you

15  can't tell what the earlier convictions were for, they were

16  apparently narcotics offenses and in New York, if you have a

17  class B -- a class C narcotics conviction, which is a common

18  conviction, even on a sale as a plead-down, to C from a B, one

19  to three is a permissible sentence.

20              So, I don't think that Amante, in Amante the

21  argument that I'm making was raised, nor necessarily was the

22  factual predicate there, although you can't tell from the

23  Amante decision.

24              THE COURT:  And the difference would be Category III

25  or IV?

1          MR. TRABULUS:  That's correct.

2          MS. SMITH:  Category III or IV.

3          So, if Your Honor doesn't believe that the two

4    points for the restraint apply, so we are in 18, the

5    difference if it's an 18 in Category III, is 33 to 41.  If

6    it's Category IV, it's 41 to 51.

7               Obviously, in addition to the 120, for Count 3.

8          THE COURT:  Well, I do not know that it matters

9    because I think in either I have sufficient range given the

10   ten-year consecutive to sentence this chap.  What matters more

11   to me is the question that I raised initially, which is, are

12   we going proceed to an evidentiary hearing on the question of

13   the gun?

14          But let me go on.

15          There is a portrayal of this series of events in the

16   robbery, that is, one might say, quite favorable to

17   Mr. Andrews.  His attempts, for example, to persuade his

18   colleague to release the folks as the police had demanded.

19   Apparently, his attempts over a couple of hours sort of soften

20   this guy up.

21          Is this consistent with your understanding of the

22   facts?

23          MS. SMITH:  It's consistent in some senses and not

24   others.  I don't think that there is any dispute that there

25   were attempts at different points by Mr. Andrews to, for

1  example, get Mr. Peters to put the gun down.  There was some

2  discussion of his having let the hostage go.

3           There is no question that all three of them were

4  drinking in the back of the store and that things got a little

5  fast and loose at different points, and there were statements

6  by Mr. Kane.

7           THE COURT:  I read his statement.  I read his

8  recorded statement.

9           MS. SMITH:  Well, the recorded statement, I will

10  just say for the record, Your Honor, the Government never

11  received that recorded statement.  I don't know the full

12  transcript of what was said.  It was done by a defense

13  investigator who did not advise Mr. Kane that he was being

14  recorded, and I, because the Government's never received the

15  full recording, I do not know what else was in that recording.

16           MR. TRABULUS:  Actually, the Government has been

17  shown the full transcript of the recording, although not the

18  recording itself.  I didn't show it to Ms. Smith.  I did show

19  it to her predecessor AUSA in the course of plea negotiations

20  way back when, Your Honor.

21           And if, you know, the Government hasn't given me the

22  witness statements either.  So I think we are booth in an

23  equal position there.  The Government said that it's

24  consistent in some ways and implied there's some ways it is

25  different.  The Government says it is something different, I'd

Proceedings                    12

1  like to hear what it was, because I don't think there really

2  is anything different, Your Honor.  It's pretty clear.

3          Mr. Kane had no great love for either of the two

4  people who robbed him.  He thought far better of Mr. Andrews

5  than he did of Mr. Peters.  It's clear.

6          But this was a robbery.  It was an armed robbery.

7  None of these peopel who were interviewed, and we had all

8  three of them interviewed, some of them spoke at greater then,

9  length.  Mr. Kane at greater length, none said that

10 Mr. Andrews abused them.  That is clear that Mr. Andrews was

11 at the door, told people to lie down, get on the floor, I

12 should say.

13         Mr. Peters, who is their witness, Your Honor, lied

14 in his plea allocution that he didn't rob one of the other

15 people in there and he did.  In fact, he was charged with that

16 robbery and that the proceeds of it were recovered.  They were

17 found on the floor.

18         He also apparently lied to the Government that the

19 gun discharged accidentally.  The gun didn't discharged

20 accidentally.  Mr. Andrews was aware of only one discharge,

21 because I think he was in the basement when the other

22 discharge occurred, and he might not have heard it, but it

23 didn't discharge accidently.

24         Mr. Kane made it perfectly clear when he was

25 interviewed that Mr. Peters's held it near his head and

1    discharged it and said, this is so you know it's loaded.

2          I mean, it was a pretty extreme circumstance and

3    Mr. Andrews acquitted -- acquitted is the wrong word -- you

4    know, he showed a certain amount of decency, Your Honor, which

5    you don't normally expect.  I mean, not only did he say he was

6    sorry to Mr. Kane, and try to make him feel better in terms of

7    what was going on, he got down on his hands and knees and

8    prayed with him when Mr. Kane said he wanted to pray.  And

9    most importantly, Your Honor, I don't know whether he saved

10   any lives or not, but he was -- he was on the inside, the

11   police were on the outside, they were the ones that -- he

12   asked them for more time and he needed more time because he

13   was working on Mr. Peters.  He was trying to get him to calm

14   down.

15         Mr. Kane said that he, Mr. Andrews, asked Mr. Peters

16   six times to hand over the gun, which is a dangerous thing to

17   do, to go up to somebody who has already threatened to shoot

18   and kill himself and says he wants to go out in a blaze of

19   glory and has fired the gun and asks him to hand it over.

20         He never did hand it over, but he did get him to

21   relax.  They drank.  Peters got drowsy, Cane got a little

22   tipsy, he was less tipsy because he wasn't drinking that much,

23   he wanted to keep his head about him.

24         Your Honor, that's what happened, and I think if

25   Mr. Kane were brought in here, and I have absolutely no desire

Proceedings                                    14

1    to bring him in here, I could turn over the full transcript to

2    the Government, or to the Court if they want it.  It's not a

3    perfect transcript, but I have heard the recording.  I could

4    turn over the recording itself.  That's what's going on.

5           I would hope, Your Honor, that in terms of a Fatico

6    hearing, I do strongly maintain that that gun, which was lied

7    about.  When Peters was arrested, he immediately said to the

8    police, because he didn't know that they knew better, that it

9    was Andrews who had the gun inside the liquor store.

10   Everybody is unanimous that Andrews never had the gun.

11          So, he has a history of lying specifically about

12   this incident and about this gun.  He said it discharged

13   accidentally.  He said that it was Andrews's gun.  I mean, on

14   the limited issue of -- if it's material to sentencing on a

15   limited issue of whether or not the gun came from Andrews, or

16   came from Peters, I would talk to Mr. Andrews about whether he

17   wanted a Fatico hearing.

18          On the other issue as to whether or not the

19   April robberies, I'd like to have an opportunity to speak to

20   him at some length on whether he would want that.

21          THE COURT:  How is it that Peters was before

22   Judge Matsumoto?

23          MS. SMITH:  The entire case was in front of

24   Judge Matsumoto and then when this defendant decided to go to

25   trial, Judge Matsumoto had a scheduling conflict and so this

1   piece of it wound up in front of Your Honor.

2          THE COURT:  Oh.

3          MR. TRABULUS:  Can I say something about the history

4   of this case, because it's a long history, Your Honor, and I

5   want Your Honor to understand something about it, because when

6   you have a long history like that, you may get the impression

7   that the defendant was in some way or other playing around.

8          This case would have resolved a lot, long ago, if it

9   had been agreed, as it now is agreed, that Mr. Andrews is not

10  a career offender.  The Government had offered him a plea way

11  back when which, in fact, would have been more favorable to

12  him than the plea that he took, because aside from the fact

13  that he would have gotten three points for acceptance of

14  possibility, he would have pled just to brandishing the gun.

15         The Government recognized that he was not

16  responsible for discharge of the gun, and indeed, acted to

17  prevent it from being discharged to the extent he could.

18         But the Government was taking the position that he

19  was a career offender and the plea agreement provided that,

20  and I eventually prevailed upon the Government to allow an

21  exception to the waiver of appeal provision to allow an appeal

22  of that, but they still were saying that they wanted, that

23  they were taking that position, and that, Your Honor,

24  seriously caused this case not to resolve a long time before

25  it actually did resolve.

Proceedings                                          16

1          We did resolve it, even though the Government had

2    not yet come to that.  By that time, I had done the research,

3    more of the research, there had been more case law, and I

4    advised Mr. Andrews that I was quite confident that he was not

5    a career offender.  And on that basis, we resolved this.

6          I just want Your Honor to know something about that.

7    The Government was prepared to recognize that he was not

8    responsible for the discharge and let him plead to something

9    that carried a seven-year sentence instead of a ten-year

10   sentence under 924(c).

11         MS. SMITH:  Your Honor, I just want to make the

12   record clear.

13         This case belonged to a different AUSA, and whatever

14   plea offer Mr. Trabulus is referring to, was not, pre-dated my

15   involvement in the case.

16         THE COURT:  Fair enough.

17         MR. TRABULUS:  That's true.

18         MS. SMITH:  I don't think that that's necessarily an

19   appropriate discussion to have in the context of sentencing.

20         There was a superseding indictment.  There's no

21   question that the gun was discharged.  There is no question

22   under Second Circuit law that he is responsible for that

23   discharge, and that's what he pled guilty to.

24         MR. TRABULUS:  I agree, Your Honor.  There is no

25   question that under Second Circuit and U.S. Supreme Court law,

Proceedings                                    17

1  he is responsible for that, because even an accidental

2  discharge is something that he's responsible for.

3           THE COURT:  In a way, he is a very lucky fellow.

4  Stop and think about what might have happened in that liquor

5  store.

6           MR. TRABULUS:  That's right.

7           THE COURT:  If that weapon was fired into somebody's

8  chest, he would be on the hook for felony murder.

9           MR. TRABULUS:  That's right, Your Honor.  He is,

10 partially along with Mr. Peters, responsible for the emergency

11 that he helped alleviate and solve.  There's no question about

12 that.

13           I'm not asking Your Honor to pin a medal on him.

14           THE COURT:  I understand.

15           MR. TRABULUS:  But the facts are as they were

16 presented.

17           THE COURT:  He has escaped career offender status, I

18 think, correctly.  I agree with you, but narrowly.

19           MR. TRABULUS:  Yes.

20           THE COURT:  He is a very lucky fellow.

21           Two, three, he has a lawyer who knows what he is

22 doing and goes to work for you, by the way, at taxpayer

23 expense, I might add.

24           You are a very lucky fellow.  And yet I am faced

25 with somebody who either just cannot stop holding up liquor

```
                          Proceedings                    18
```

1   stores, or was that an isolated incident.

2          In a way, I do not know how terribly germane, it is

3   certainly germane, but with that ten-year kicker, you know,

4   for a, you know what I am saying man, we are already starting

5   at a substantial sanction.  So I am not so sure it makes all

6   the difference in the world.

7          But have your conversation with him.  If you need

8   more time, I am happy to put it over, but --

9          MR. TRABULUS:  If I could, either at the table there

10  or in the pen, I would like to talk --

11         THE COURT:  Wherever you are more comfortable.

12         MR. TRABULUS:  The table would probably be good,

13  well, as long as the microphone is off.

14         THE COURT:  I will be ready when you are.

15         (Recess taken at 12:25 p.m.)

16

17

18

19

20

21

22

23

24

25

Proceedings                                    19

1          (In open court.)

2          (Judge RAYMOND J. DEARIE enters the courtroom.)

3          THE COURTROOM DEPUTY:  All rise.

4          (Defendant enters the courtroom.)

5          THE COURT:  Sir.

6          MR. TRABULUS:  Yes, Your Honor.

7          I've met with Mr. Andrews.  On the question of the

8    previous robberies, and we're talking about the robberies in

9    April involving Mr. Peters and Darsky Sylvestre, we are not

10   going seek a Fatico hearing, Your Honor.  We acknowledge that

11   Your Honor has to, in light of his record, has to sentence him

12   on the basis that he's hardly an angel, that he has been

13   involved in this type of activity before and we are not going

14   to seek that.

15         On the question, however, of whether or not he

16   supplied the gun as opposed to Mr. Peters, if that is material

17   to sentencing, Your Honor, if that is material to Your Honor's

18   sentencing decision, then we would want a Fatico hearing,

19   because Mr. Andrews very strongly has maintained that that gun

20   was Mr. Peters, and I point out that the other incidents in

21   April of 2011 that we're talking about here, I think I might

22   have said 2009 before, the other robberies that we've been

23   talking about, it was Peters who had the gun.  It was Peters

24   who had the gun and the allegations were that Mr. Andrews was

25   in a car outside.

VB        OCR        CRR

Proceedings                                    20

1          THE COURT:  Here is my reaction.

2          For two reasons, I think I can confidently conclude

3    that it is not material.

4          Number one, Mr. Peters's statements about the gun

5    already has been shown to be suspect.

6          But number two, given the range of punishment here,

7    particularly the sentence required on Count 3, as I said

8    earlier in the proceeding, I think I have ample latitude to

9    sentence this gentleman at a level that I think is a

10   responsible and reasonable sentence.

11         So that is my reaction.

12         If that avoids the necessity of a factual hearing,

13   and you are both content with that, so be it.  We will proceed

14   on that basis.

15         MR. TRABULUS:  Yes.

16         MS. SMITH:  Yes, Your Honor.

17         THE COURT:  All right.

18         Mr. Trabulus, I am going to give you the benefit of

19   the doubt on the criminal history, although my guess is the

20   Government's probably got the better argument, but I do not

21   think it affects my number.  So I will give you the benefit of

22   the doubt on the issue of criminal history, which would put us

23   at a range of Counts 1 and 2, 32 to 41, if I am not mistaken

24   with the consecutive sentence required on Count 3.

25         Are we all on the same page there?

1          MS. SMITH:  Yes, Your Honor.

2          MR. TRABULUS:  Yes.  And on the restraint also?

3          THE COURT:  Yes.

4          MR. TRABULUS:  I'm sorry, my mind was trying to

5    think of what I was about to say, thank you.

6          MS. SMITH:  So the total combined range would be 133

7    to 161; is that right?

8          MR. TRABULUS:  153 to 161.

9          MS. SMITH:  Yes, excuse me.

10         THE COURT:  Correct.  I will turn it over to you,

11   sir.

12         MR. TRABULUS:  Yes, Your Honor.

13         I think in one way or another, I touched on

14   everything that I was going to say, except that Your Honor

15   said something which made me think a little bit.

16         Your Honor says that Mr. Andrews was lucky, lucky

17   that the gun when it was discharged, that the bullet didn't

18   hit somebody in the chest and lucky to have me to make

19   arguments on his behalf and address the guideline issues and

20   so forth.

21         THE COURT:  I do not throw out compliments easily or

22   often.  When I do, I mean them.

23         MR. TRABULUS:  I appreciate it, but the point that

24   I'm getting to, Your Honor, is that there were people who were

25   lucky and I know it only goes so far, Your Honor, but there

1   are people that were lucky that it was Mr. Andrews in that

2   liquor store and not somebody else with Mr. Peters, because he

3   really did act in a way which, although it certainly was

4   motivated by his own self-interest, he didn't want to die in a

5   fusillade of bullets from the police.  He didn't want anybody

6   else to either.  He kept a level head and he did what he could

7   to defuse a situation.

8          I don't know whether any lives were saved as a

9   result of that, and if so, whether those lives included those

10  of police officers and law enforcement people.  But

11  Your Honor, it was a potentially explosive situation,

12  disastrous situation, that turned out well and it turned out

13  well because of the efforts of the police, but also because of

14  the efforts of Mr. Andrews inside there.  And I hope that that

15  is taken into account in considering sentencing and I ask

16  Your Honor to take it into account.

17         Your Honor, as Your Honor has adverted to the

18  substantial amount of time that is required under Count 3, the

19  ten years, and what I would say is, looking at this case and

20  looking at this case alone, and you are going to hear from

21  Mr. Andrews, too, about where he is now, I would say,

22  Your Honor, and I understand that a consecutive component is

23  called for by the statute and it's certainly their policy,

24  reasons for it, but I am submitting, Your Honor, that not that

25  much more than ten years suffices to comply with the purposes

1  of 3553(a) here.

2           I ask Your Honor to consider sentencing Mr. Andrews

3  to below the bottom of the guidelines of 153 months in light

4  of the history here and the circumstances of this, you know,

5  what transpired, thank you.

6           THE COURT:  There is an issue that I neglected to

7  raise at the outset.

8           With respect to the plea, I do not know that this --

9  as I understand it, he is not an American citizen.

10          MR. TRABULUS:  Yes, Your Honor, he is not an

11  American citizen.  We've discussed that he is -- I've advised

12  him that he is facing mandatory deportation.  This is being an

13  aggravated felony.

14          If I recall correctly, that may not have been

15  addressed at the plea colloquy.

16          THE COURT:  It was not.

17          MR. TRABULUS:  In fact, I wasn't certain at the time

18  whether he was an American citizen.

19          There are some other things also that I don't think

20  were absolutely addressed at the plea colloquy, which I would

21  raise with Your Honor.

22          The plea colloquy occurred before the <u>Rosemond</u> case

23  was decided, and I don't think he was specifically asked

24  whether he knew in advance of the robbery whether or not there

25  was a gun to be involved.  But I think he would be prepared to

Proceedings                                    24

1   state that Peters showed him the gun before they went in

2   there, so he did know about it.

3           With regard to the, I've discussed the immigration

4   consequences with him multiple times, including before the

5   plea, because there were conflicting information in the

6   documents that I received.  Some of them showed a birth place

7   of New York.  Others showed a birth place somewhere in the

8   West Indies.

9           So Your Honor, I would be, if the Court has

10  questions of Mr. Andrews about that, I think it might be

11  appropriate.

12          THE COURT:  Well, let me turn to the Rosemond matter

13  because that was my next point, just so that we -- if he had

14  supplied the gun and that had been a stipulated fact, we would

15  not really have much of an issue.  But in light of his

16  position which may well be valid, I have to ask, Mr. Andrews,

17  before you entered this liquor store, the plan was to conduct

18  an armed robbery; is that fair to say?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  And you knew that your friend had a

21  weapon on him?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  You saw it before you entered the store?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And I assume you knew as well he would

Proceedings                                      25

1    use it brandish it, maybe not fire it, but brandish it during

2    the course of the robbery?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Now, you are not an American citizen;

5    correct?

6              THE DEFENDANT:  A resident.

7              THE COURT:  Permanent resident.

8              THE DEFENDANT:  Yes.

9              THE COURT:  I understand.

10             But not a citizen.

11             THE DEFENDANT:  Yes.

12             THE COURT:  So, as Mr. Trabulus has stated, this

13   subject ideally should have broached at the time of your plea

14   as a consequence of your conviction, you will likely be

15   removed from the United States.

16             Do you understand that?

17             THE DEFENDANT:  Before I got arrested, I was

18   supposed to put in an application to get my American citizen,

19   but I got arrested on that.

20             THE COURT:  What did you have?

21             THE DEFENDANT:  My passport, everything.  I was

22   supposed to do the application, fill out my, to get American

23   citizen passport, but I got arrested on that.  If I was on the

24   street right now, I would have had my American passport.

25             THE COURT:  Well, you have to assume for purposes of

Proceedings                              26

1   today's proceedings that you are going to be deported when you

2   finish your sentence.

3            Do you understand that?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Now, if that is, and that is a

6   consequence of your plea.

7            So, before I can actually accept your plea, I have

8   to satisfy myself that you understand that, and nonetheless,

9   you are prepared to stand by your pleas of guilty.

10           Do you understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And do you wish to continue in your

13  pleas of guilty?

14           THE DEFENDANT:  Yes.

15           THE COURT:  And you have had discussions with

16  counsel about it?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  So you understand the consequences.

19           THE DEFENDANT:  Yes, sir.

20           MR. TRABULUS:  We also discussed Rosemond after it

21  came down and I advised him that, in fact, the allocution

22  wasn't sufficient there, but he told me he wanted to persist

23  in his plea of guilty.

24           THE COURT:  Okay.

25           Based on the information provided in the transcript

Proceedings                                    27

1    of the plea proceeding, as supplemented in my discussions

2    today with Mr. Andrews, I find that at the time he fully

3    understood his rights, subject to today's discussion, he now

4    understands his rights, the consequences, possible

5    consequences of his pleas, and that there are factual bases

6    for the pleas of guilty.

7              I now, therefore, formally accept the pleas to

8    Counts 1, 2 and 3 of the indictment bearing Docket Number

9    11-CR-587.

10             Anything else, Mr. Trabulus?

11             MR. TRABULUS:  Not from me, Your Honor.

12             THE COURT:  Anything from the Government?

13             MS. SMITH:  Your Honor, I think we've laid out our

14   position pretty clearly in the sentencing memo, unless Your

15   Honor has any questions.

16             THE COURT:  Fair enough.

17             And Mr. Andrews, anything you would like to say,

18   sir?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Please, take your time.  Go ahead.

21             THE DEFENDANT:  I wrote you a letter.

22             THE COURT:  I have it.

23             THE DEFENDANT:  I want to read it to you.

24             THE COURT:  Go right ahead.

25             THE DEFENDANT:  Your Honor, I would like to

Proceedings                                      28

1   apologize to the Court and to my family for the crime I

2   committed.  My mother has supported my entire life and I let

3   her down.  It hurt me to be away.  It hurts me be away from

4   her.  I take full responsibility for my action.

5           I understand the pain I caused the victim.  I

6   understand the crime I had -- I understand my crime had a

7   negative effect on society.  I am full of remorse and regret.

8   I would like to sincerely apologize to the victim.

9           I have used these past months to do some serious

10  soul searching.  I want to change my life and do whatever I

11  can to become better man.  I want to live life as a

12  law-abiding citizen.  I want to get a job.  I want to walk

13  away from my past life and never look back.  I want to make my

14  mother proud.

15          Thank you, Your Honor, for your time and

16  consideration.

17          THE COURT:  Those are certainly appropriate things

18  to say and I assume you are sincere.  The proof of the pudding

19  will be when you are released.  You are a young man.  You have

20  the opportunity to, not without challenges, I understand, but

21  you have time and the opportunity to turn in a different

22  direction.  Everyone hopes you not only want to do it, but

23  that you have the strength to do it.  It is going to take

24  personal strength and courage.

25          You seem like a decent guy.  I do not know why I get

Proceedings                                    29

1    that, notwithstanding, I am dealing with somebody who goes

2    into stores and conducts armed robberies.

3              MR. TRABULUS:  I won't disagree with you,

4    Your Honor.  I think he is, notwithstanding that.

5              THE COURT:  I wish you well.

6              I am going to impose a sentence of 24 months on

7    Counts 1 and 2, and 10 years on Count 3, to run consecutive to

8    the sentences imposed on Counts 1 and 2.

9              $100 special assessment on each count.

10             Five-year supervised release.

11             I think that is an adequate range, given what is

12   before me, given the ten-year mandatory sentence to address

13   any reasonable sentencing objective.  Let's hope I am right.

14             MR. TRABULUS:  Your Honor, I have two requests.

15             One is that Your Honor recommend designation to

16   Allenwood.  I think, it's pretty clear to me that he's going

17   to be scored in a way that could cause him to go to a

18   penitentiary.  That's a nearby one.  It also has a medium,

19   which I have a hunch he would graduate to, and it's also close

20   to his family.

21             The other request I have, even though I don't know

22   whether or not there would be an appeal, I will discuss with

23   him whether he wishes one, was to, the permission to have the

24   minutes.

25             THE COURT:  Granted.

VB          OCR          CRR

Proceedings                                    30

1          MR. TRABULUS:  Thank you.

2          THE COURT:  I will voice the recommendation and the

3     judgment.  We will see what the Bureau of Prisons does.

4     Certainly, in his interest to be as close to family as is

5     possible.

6          Anything else?

7          MS. SMITH:  No, Your Honor.

8          There was an underlying indictment which we

9     obviously move to dismiss.

10          THE COURT:  That application to dismiss the

11     underlying indictment is granted.

12          Anything else, sir?

13          THE DEFENDANT:  Thank you, sir, for everything.

14          THE COURT:  Good luck.

15          THE DEFENDANT:  Thanks.

16          THE COURTROOM DEPUTY:  Note no fine.  Judge Dearie

17     imposed no fine.

18

19          (Matter concluded.)

20

21                         oooOooo

22

23

24

25